1, 3, 3, 8, 7, 4. Michael Kinlin v. Shawn Kline et al., Arguments Not to Exceed, 15 minutes per side. Mr. Rosenbaum for appellant. Thank you. Good afternoon. It is my honor to appear on behalf of Michael Kinlin, the appellant. I would like to reserve 5 minutes of my time for rebuttal. Okay. I argued that my client was stopped for DUI without probable cause, and that's not the case. My argument was, I thought clearly made, maybe not, that there was no probable cause to stop him for any reason whatsoever. And then after that, even if he did have a legitimate reason to stop him, which we dispute, that viewing all the objective factors available to the officer at the time of the arrest, he did not have probable cause to believe that his driving was impaired, and that therefore, either way, he was liable for a constitutionally bad arrest. The reason that I say that there was no probable cause is, I believe the record supports that the trooper, who was very honest in his deposition, admitted that it was impossible for him to know for sure if the lane change that was observed on the videotape was actually illegal or improper. And I submit, if the officer can't tell that if the lane change was illegal or improper, no one can use it for the basis of probable cause to find that criminal conduct was afoot to justify the initial stop. There were two possible infractions, traffic infractions, in the record in this case. The first was that my client's left rear tire allegedly touched the center line. This is mentioned in the officer's report, but it is not viewable or it was not documented by the videotape. And I might add that this entire encounter, from when the trooper first saw Mr. Kinlan to the time he was actually arrested, was 1 minute and 57 seconds. The trial court did not consider the lane change that was not documented by the videotape. It based its decision solely upon the allegedly illegal lane change. It wasn't crossing the center line. It was based on the lane change, swinging between the two cars. Well, actually there was two lanes, and he went from the right lane to the left turning lane. And the officer admitted that in circumstances when cars are that close, that when some people put their blinkers on, a courteous driver will often hit the brakes and let him in at the last minute. And we submit that's what the tape shows, and that there's no conclusion that the reasonable person would look at and say, well, that's probable cause to believe there's a lane change. The officer conceded that at deposition, but yet somehow... What's the specific portion of the deposition that you're referring to? It would be record entry 22-6, page ID number 424 through 427, but especially on 424. And I have it here. I just wanted to look at it while you were talking. I can read it to you. I can read. I understand probably way better than I can. You've told me what I needed, so I'll take a look at it. So I still respectfully submit that if the officer can't tell if there's a violation, neither can the trial court. He's conceded that this could be a legitimate driving. And I submit a review of the entire video surveillance tape. If you look at it, we'll support our position. Now, I also argue in my second assignment error that the trial court erred when it held that Trooper Klein could legally and justifiably be aware of and acknowledge all the exculpatory factors that he was aware of at the time of the arrest and disregard them when making his probable cause determination, because that's what the trial court did. It has permitted Trooper Klein to disregard any objective exculpatory factor, which I submit is contrary to the law regarding qualified immunity. And the other point that I would like to make today that dawned on me when preparing for argument, the records replete with incidences where I asked Trooper Klein at his deposition, did he consider any other exculpatory factor? And he would repeat his inculpatory factors. And then I would say, but I'm asking about the exculpatory factors you were aware of. And there were many. Well, where do you derive your theory that part of the probable cause analysis is weighing inculpatory versus exculpatory? It doesn't really seem that that's normally. I mean, the probable cause process is normally pretty. It's assessing what you do know on which you base probable cause. It's not really an evidence-weighing process. Well, I would respectfully disagree to that to some extent. I believe the case law is quite clear that the officer cannot disregard the objectively exculpatory factors that are available to him, and he has an obligation to even seek them out to some extent. The largest, the biggest exculpatory factor here would have been his assessment of the credibility of your client, and that's not really something best made on the spot. I disagree that that was the biggest factor. I would submit that that's one of many. What do you think is the biggest exculpatory factor? Well, first of all, I think it's a conglomeration of them. But what I started to say was, in Ohio, having an odor of alcohol, having glassy eyes, having a flushed face, or even having slurred speech without something additional is not probable cause for a DUI arrest. And I cite that law in both of my briefs. And are those state cases or federal cases? They are state cases. That's wrong, isn't it? I mean, the standard of probable cause is based on federal law, not state law. You're not talking about whether it's probable cause to proceed in state law. You're talking about whether probable cause or lack of it could amount to a constitutional violation. I understand. And I believe that factors that this officer should have known. My point is this. Having red eyes, an odor of alcohol, is not entirely always consistent. Nobody admitted he had drank two beers. Two beers. And that would not make anybody. Oh, but sort of there's the old saw. Everybody says they had two beers. That usually means they drunk the whole keg. That's exactly what this trooper said. That he candidly admitted that he presumed that everyone's a liar and that no one would ever deem that his request to do field sobriety tests. How many folks do you think he stopped for DUI who said they had two beers who in fact turned out to have had considerably more? Well, I think that that's the truth. But I guess are we willing to say then you're guilty until proven innocent? Well, we're not trying to. He's not being shown guilty. It's just whether he has probable cause to believe. And what I'm trying to tell you is his training should have been in Ohio that those things that he observed, that he lists as the inculpatory factors, are not legally sufficient. Bear in mind that he didn't stop him because his driving looked bad. He didn't stop him because he thought he's weaving all over the road like a drunk. I don't know whether he stopped him because he thought he cut people off too quickly. I submit that in all honesty he could not have done that either because he admitted that he couldn't tell if he cut them off or not. Well, what he said was he couldn't tell if she let him in. And that's a part of what happened, but that's not. It's unlikely that somebody in fast-moving traffic, moving with the cars fairly close together, it's pretty unlikely that somebody would brake before the person began to move into their lane, and that's not what the officer saw. And he said that he couldn't tell at the end of the day whether she let him in or whether she braked because he'd already gotten in front of her. But either way, he's disrupting the normal flow of traffic in that lane. I think if you look at the video that that's not the case. My client signaled, she hit the brakes and let him in, and that happens. And it wasn't fast-moving traffic. Everybody's slowing down. They're all waiting in line, coming to a line for a red light. But how do you account for the fact that your client even testified that she had two feet? Isn't two feet of space, when he slipped in, doesn't the same sort of law that you look to for the exculpatory factors also indicate that you need a car link in order to be able to make a lane change? There's no way. The officer conceded in that situation where everybody's lined up and someone needs to change lanes that there isn't a car link. But I would, even for the sake of this argument, assuming he had reasonable grounds to stop him, I think that that is one factor. That's the only factor he had to show that this guy was impaired. Every other factor that he admitted. He admitted two bears, and then he refused three times to take the test. Is it your position that the police officer cannot consider that in determining whether there's probable cause? I think that is one factor he has to consider. Well, that's two. He saw the lane change. He smelled alcohol. He admitted two bears. He refused a sobriety test three times. I mean, is that an additional number of factors you still claim is insufficient? Well, I believe, in the record, we went through a litany of factors that the State Patrol requires. The litany of factors came from what? The State Patrol procedure for what you look for for DUI. And the only one he had that's on their list is the improper lane change. So even assuming that he did that, I don't think this Court's willing to hold what it sounds like it may be about to, that anyone that stopped for improper lane change that refuses to take a field sobriety test is fair game to be arrested. And that's where this is going. You've got to stick in the two beers and the smelling of alcohol. Anybody that has two beers smells of alcohol. Anybody, you know, and people can have two beers and still drive in this state, as far as I know. And so when you're confronted with a citizen that has two beers and honestly states so, I understand that at times this man, the trooper, has been lied to. But if you look that his speech wasn't slurred, he was steady on his feet, that his driving, if you look at the CD, isn't that bad, and all the other factors that the State Patrol has you look for in their procedure are missing, that you're obligated to consider all of that before you throw somebody in your car. And, again, in Ohio, under Ohio law, the odor of alcohol, bloodshot eyes, flushed face is not enough. And the reason that's not enough is because that is also consistent with not being impaired. There are explanations for those things that are consistent with the honest person driving their car unimpaired. And I know of no public safety exception or err on the side of caution, as this court did. As I understand this court's case law, the officer, and he admitted in his deposition. You may not be able to see, and I was looking at you, so I was not looking at the timer either. So I'll try to keep it. I don't know how long your time had been out, but I might have missed you for a few minutes. And I'll try to do a better job of keeping my eye in both places on your rebuttal. All right. Ms. Kroski, we'll hear from you. Thank you, honorable judges. My name is Jennifer Kroski. I'm here from the Ohio Attorney General Mike DeWine's office on behalf of Trooper Kline and the Ohio State Highway Patrol. May it please the court. We ask that you affirm the decision of the district court, which granted our motion for summary judgment and denied Mr. Kinlan's motion for partial summary judgment, because the district court properly found that there was probable cause for this arrest, and even if not, Trooper Kline would be entitled to qualified immunity. A trooper has probable cause for a DUI arrest when he smells alcohol, has an admission to drinking alcohol, and has a refusal of a field sobriety test. What's your authority for that? There are a couple of different cases. You know what? I don't even remember if these cases are DUI cases that I have written in my notes. I apologize. I'd have to take a look back at my brief. I believe we did cite some in the brief. We haven't got any Sixth Circuit case that says that. I don't know that there are any Sixth Circuit cases that say those factors specifically. However, probable cause is, as I believe Judge Gibbons was mentioning, that it's a totality of circumstances. And so you have to judge whether or not probable cause existed from the position of the law enforcement officer who has to make the decision at the time that he has to make the decision. And we have to ask ourselves, what do we want our law enforcement officers to do when they see two traffic violations, they stop someone, they smell alcohol, the driver admits to drinking, and then refuses field sobriety testing? When you first listed the factors that you said constituted probable cause, you didn't include the traffic infraction, I don't think. Does that mean that you share Mr. Rosenbaum's assessment of what the officer said about that in his deposition? Do I share what he said? Are you relying on the traffic infraction as a part of your probable cause argument? I don't believe so. And let me say this. Why not? We did not believe that Mr. Kinlan had properly pled a challenge to the stop, whether or not there was reasonable suspicion for the stop. However, that came up in argument both at the district court and in briefing before this court. So we did analyze whether or not there was reasonable suspicion for the stop. I'm not really asking about that. What I'm really asking is when the officer gets to the point that he's inquiring in his mind, assuming that he's going through a legalistic formulation at that point, and he's saying, okay, what do I have that indicates probable cause, is he only thinking about the admission to using alcohol, the refusal of the field test, the smelling of alcohol, is he only thinking about those things, or is he also thinking about the fact that in his mind he observed this individual commit what he thought was a traffic infraction, which could be consistent with alcohol consumption? I think I misunderstood your question. So, yes, in this case, Trooper Kline had that. He did consider it, and I think it is important. So your omission of that when you were giving Judge Gilman a listing was not intentional? It was not intentional, except that if we were talking about the hypothetical situation where a trooper sees someone sitting in a vehicle and happens to engage with that person, realizes that that person smells of alcohol, the person has admitted to drinking alcohol, and says, I'm going to drive home now. But, you know, I don't think anybody asked you about those hypotheticals. Okay. I just wanted to make sure I didn't. What basis did the trooper Kline have to stop to pull him over in the first place? He clearly didn't have any inkling he was possibly intoxicated. It was only because of the lane change, right? That is correct. From what your opposing counsel says, the video doesn't really support him, and even his own deposition he says he admits that that wasn't really clear. Is that your position, or do you agree with that? No, I don't believe that that is what Trooper Kline testified. And the testimony about that does go on for several pages, so I won't say all of it, but it comes down to. So you're saying, have you ever seen a situation where traffic is crowded like that? Sure. And someone needs to get over at the last minute, and they put their blinker on, and someone lets them in. We've all seen that. Yes. That's not improper driving, is it? His answer is, the patrol uses every 10 miles an hour forward speed, there should be at least one car length in between. He never admitted that there was nothing wrong with that lane change. He thought that there was something wrong with the lane change. He didn't talk to the driver who Mr. Kinlan says let him in. All he can do is look at what he sees, and he sees Mr. Kinlan leave his lane of travel, and the driver that he's pulling in front of apply her brakes. The point I saw that Mr. Rosenbaum was referring to, where he said he couldn't be sure, has to do with the issue of whether the driver let him in or not. Is that your understanding or not? I believe that Trooper Kline was trying to be honest, and he didn't acknowledge specifically in his deposition that he didn't talk to that driver. But I think in his mind he thinks, I didn't talk to her, I don't know if she let him in. He said he didn't think that she let him in based on what he saw. That's what his testimony was. And then through additional questioning, he acknowledges that he doesn't really know for sure because he didn't talk to her. Do you think the video supports his position that it was too quick, and that there was a call to make the lane change properly? Yes, I believe it does. And I believe we provided sufficient copies for all of you to be able to take a look at that, and I hope that you take the time to do it. As I said, there was a— But it does not show the other infraction, the crossing of the line. And I understand that the other court may not have looked at that, but is it part of your argument that the officer gets to consider the totality of circumstances that would include his statement that there were two traffic infractions? Yes, and the record supports the traffic infractions. The video doesn't show that second violation, but the video does. You can hear Trooper Kline, when he pulls Mr. Kinlan over, he says, Do you know why I stopped you? And Mr. Kinlan says, No, or whatever. And Trooper Kline immediately, at that point in time, right after it happened, says, I saw two violations. So probable cause exists when— The one that's not shown is the one after he turned and went across the— Is that right or wrong? I think before he turned. I think it was right before the turn. Oh, I thought—maybe I'm misunderstanding what happened. He crossed from two lanes going the same direction when he cut in. There's also an infraction where he went over the center line. Where he touched the center line. I believe it was right before the turn. Before the turn, not after the turn. I believe so. But you can't see it because the car that he moved in front of blocks that from view on the video. It does not show. It does not show, and I'm not sure if it's because the car blocks. Trooper Kline's testimony was that it doesn't show because he's sitting in the driver's seat. The camera that picks all of this up is actually closer to the passenger side of the vehicle compartment. It just can't—it can't see what he sees. Isn't the existence of probable cause in a 1983 action usually a jury question? I acknowledge that there are a couple of cases that have said that there can be a jury question. However, I think that this is different. For example— Aren't there some cases that say it is usually a jury question? Unless the facts are so clear based on the record that it wouldn't be. And, you know, this is different than the Green v. Throckmorton case. In that particular case, you know, after the probable cause determination by the law enforcement officer, there was a blood alcohol test that showed zero. Now, I don't think that that should really weigh into the probable cause evaluation because probable cause has to be determined before that was known. However, for whatever reason in that particular case, that information was allowed in, and the court at that time said, well, because it was a zero, then the jury could question the trooper's truthfulness. We don't have that in this particular case. Mr. Kinlan actually did— Well, the real fact—I think I wrote that opinion. I think the real fact was that Ms. Throckmorton—not Throckmorton—Green told the officer she had not drunk anything as opposed to here where he says, I had two beers, and he smells of alcohol. I mean, she didn't smell of anything because she had not drunk anything. The blood test just confirmed that she hadn't, in fact, drunk anything. Right. Wouldn't it be fair to say that the time that probable cause is a jury question is when there exists a genuine issue of material fact as to the existence of one of the factors that supports probable cause. Any time you've got what's an essentially undisputed set of facts, whether those facts amount to probable cause, is always going to be a question of law for the court. I believe that's correct, and that's what I think we— So there are plenty of probable cause cases where there are jury questions, but there are also plenty where there's not a jury question. I don't believe that there's a jury question here. And for the reason that the district court held, that there are no genuine issues of any material fact. You've got the factors that the trooper in this particular case looked at. He had the two traffic violations. He smelled alcohol. The driver admitted to drinking alcohol and then refused the field sobriety test. What else could he have done? How do you treat Mr. Kinlan's change of heart while he's being— right after he's been told he's under arrest and his statement that, all right, I'll take the test? Wouldn't—in many practical situations, wouldn't the police officer then say, okay, do it? I don't know that any Ohio State Highway Patrol trooper would, essentially, un-arrest someone. And that's because these troopers are trained not just about what constitutes probable cause to make an arrest and all of this kind of stuff, but they're also trained, on the other hand, it has nothing to do with this case, but the potential liability of the state if they allow someone that is in their custody out of their control, and then there's some other kind of a problem. We've had those cases, too. And I think that Trooper Klein's testimony in his deposition was that, he's in the custody of the state. He's my responsibility after he's arrested. And so he didn't think that there was any way that he could un-arrest him to allow him to do the field sobriety at that point in time. But even if you disagree on the question of probable cause, you must affirm on qualified immunity because there's no clearly established law that shows that these particular facts that we have here in this case are insufficient for that determination. You need to ask yourselves, would a reasonable trooper standing in Trooper Klein's shoes at the time that he had to make this determination believe that he had probable cause to make this arrest, considering the state of clearly established law? And the answer is yes. And that's because qualified immunity is intended to shield federal and state officials from money damages unless a plaintiff can show that the official violated a statutory or constitutional right and that the right was clearly established at the time of the challenge conduct. And Mr. Kinlan cannot point to any clearly established law that says that a law enforcement officer needs to walk through this litany of different factors that he claims are exculpatory. Some of those factors from the highway patrol policy, all the different things that they go through in his deposition, those are factors that a trooper is to consider when he's going to stop someone for suspicion of DUI. That's not what Trooper Klein did in this particular situation. He simply stopped Mr. Kinlan for a traffic violation. He didn't necessarily believe that, you know, Mr. Kinlan was driving under the influence at the time that he stopped him. He developed that afterwards. And I just, since I have a minute left, I do want to take a minute just to talk about the state cases because I do disagree with Mr. Rosenbaum about the state of Ohio law on this issue. The cases that were cited can be distinguished from the case that we have here. One was a State v. Moorlach. That particular case didn't even involve a challenge to probable cause. The State v. Cooper case, there was no field sobriety testing that was attempted. So I think that that's a big difference from what we have here in this particular case. That was the same case for State v. Finch. In that case, an officer walked up, pulled the keys out of the car, and the state court said that that constituted an arrest and that the officer didn't have probable cause. What he had was strong odor of alcohol, bloodshot eyes, flushed face, and slurred speech. But he never attempted any field sobriety. Now, there is a case that is a little bit closer to what we have here, but it did find that there was probable cause, and that was the State v. Blake case. Probable cause for DUI arrest at an accident scene based on apparent intoxication, admission to drinking, and inference that defendant caused the accident by leaving his vehicle in the middle of a highway. So again, it's a little bit different. Okay. If there are no other questions, we'll hear from Mr. Rosenbaum. I submit that the case law is clear, this court's case law is clear, that an officer in these situations cannot ignore exculpatory evidence would have negated finding a probable cause. He cannot... How do you respond to your opposing counsel's explanation that the factors that you listed were not factors relative to a traffic violation, but were factors for developing probable cause to pull someone over for DUI? I respond to that as even assuming, just for the sake of argument, that even though Trooper Klein could not say that the driving was improper and he could not say that she let him in, which I think if he can't say it, it can't be probable cause, even assuming probable cause for the stop, that's the only factor that this trooper had that pointed to the fact that there should be an arrest for DUI. That's the only factor. All of those other factors that apply to when someone is under the influence of alcohol or impaired driving do come into consideration, and Trooper Klein admitted that. You know, let's just assume for the sake of this argument that there was a legitimate traffic stop, and let's just assume that a person had two beers, made a bad lane change, he has a ticket coming. Now, how do you get from where you have the ticket coming to your liberty is going to be destroyed when you're drug off the street in handcuffs, thrown in the back of the car, and it's towed, and you're taken to the state patrol post? To do that, there has to be probable cause to believe that the man was guilty of impaired driving. And all of the factors then, as Trooper Klein considered, that the state patrol lists that weren't in this case that usually are accompanying a DUI arrest or support probable cause, he had to admit weren't there. And when you have a situation where, at best, your traffic infraction, which I agree should be considered as to whether or not there's probable cause for a DUI arrest, but when your traffic infraction is conceded that you don't know it's a fraction, and then the only thing you have is a guy saying, I've had two beers, and in this case it turned out to be the truth, and then you have the dearth of any of those other factors that the state patrol recognizes, and you have face-to-face confrontation with a man who's steady on his feet, his speech isn't slurred, he signaled his turn, he responded appropriately to all questions. You can't just say that, okay, I'm going to go back to the three factors that I have, which may or may not be consistent with DUI under Ohio law, or being impaired, and say, I'm forgetting all those other factors. You're coming with me. What's your best case to support your position? Can you cite as one case that you think goes to all four? Well, I say Ayers v. Schabel. Is that a state case? That's your case. Sixth Circuit, 188 Federal 3rd 365, says that an officer has to consider all of the objective factors for him, and this man conceded. And somehow when a motion for summary judgment where the factors were supposed to be construed in my favor and all reasonable inferences drawn in my favor, all these admissions that this trooper made in the deposition, which I thought, obviously naively, was the greatest deposition I ever took, are gone because the judge says, well, he acknowledged them. He doesn't have to consider them. That's not the law. That's not your law. Are you familiar with any of the authorities from other circuits that would seem in tension with your position? Well, in tension with the general proposition  that seemed to be on point with respect to the specific context of an arrest for DUI, what various factors can combine to be sufficient to establish probable cause? There's one case in particular, Miller v. Hargett, which is an 11th Circuit case from 2006, and I quote, a prudent officer could conclude from a refusal to take a test coupled with the smell of alcohol that the driver had, in fact, been drinking. Then if that's the case, anybody in this state that has two beers is fair game. There's no probable cause. If that's probable cause, then all you've got to do is you could sit outside any restaurant you want, ask if I've had two beers. He says no. You presume he's a liar, and you haul him off. Well, now wait. He's got to be behind the wheel and gazing at some traffic violation and refuse to take a sobriety test. Anybody that comes out of a, you know, I thought that you didn't have to prove yourself innocent in this country, that you had a right to view someone to request, an unreasonable request to take field sobriety tests as an affront to your liberty. Maybe that's not so, but you get the chance to decide that right here and right now. Well, this may be a situation where, unlike the trial situation, where no adverse inference can be drawn from your decision not to testify, it may be an instance where the drawing of some inference is appropriate from the refusal to take a test. What you're about to hold here is. . . We're not about to hold anything. We're just asking you all questions. That is the. . . We have a traffic violation here that the officer admits is iffy. We have a man that admits to having two beers truthfully, it turns out. As Judge Gilman pointed out, there's nothing wrong with his driving that would lead him to believe he's impaired. And because you say, I don't want to take a field sobriety test on the side of the road, that is now probable cause in and of itself. You're out of here. I think that's wrong. Well, I think your time's up unless somebody has an additional question. We appreciate very much the arguments both of you have given, and we'll consider the case carefully. And that's the only case set this afternoon, and you may adjourn court.